ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| RAMÓN A. PÉREZ DELBOY, VANESSA CARBALLO SANTIAGO, LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS Y OTROS<br><br>Parte Recurrida<br><br>v.<br><br>RIO MAR HOSPITALITY HOLDINGS LLC H/N/C WYNDHAM GRAND RIO MAR RAINFOREST, BEACH & GOLF RESORT, CHUBB INSURANCE COMPANY OF PUERTO RICO, INC., DUEÑO I Y OTROS<br><br>Parte Recurrida<br><br>v.<br><br>MUNICIPIO DE RÍO GRANDE<br><br>Parte Peticionaria (Tercero Demandado) | TA2026CE00502 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Río Grande<br><br><br>Sala: 302<br><br>Caso Núm.: RG2025CV00322<br><br><br>Sobre: Daños ocasionados por animales |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Prats Palerm.[1]

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 5 de mayo de 2026.

Compareció ante este Tribunal la parte peticionaria, el Municipio de Río Grande (en adelante, "Municipio" o "Peticionario"), mediante petición de *certiorari* presentada el 23 de abril de 2026. Nos solicitó la revocación de la *Resolución Interlocutoria* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Río Grande (en adelante, "TPI") por medio de la cual dicho foro declaró "No Ha Lugar" una solicitud de desestimación

---

[1] De conformidad con la OATA-26-0045, se designó a la Hon. Giselle Romero García, en sustitución del Hon. Felipe Rivera Colón, toda vez que este último dejó de ejercer funciones como juez de apelaciones, efectivo el 4 de mayo de 2026.

presentada por el Municipio. Dicho dictamen fue objeto de una solicitud de reconsideración que fue denegada mediante *Resolución Interlocutoria* de 24 de marzo de 2026.

Por los fundamentos que expondremos a continuación, se *expide* el auto de *certiorari* ante nos, se *revoca* en parte y se *confirma* en parte la *Resolución Interlocutoria* recurrida.

**I.**

Los hechos que originan la controversia que nos ocupa tienen su origen el 4 de julio de 2025, cuando el Sr. Ramón A. Pérez Delboy, la Sra. Vanessa Carballo Santiago, la Sociedad Legal de Bienes Gananciales compuesta por ambos y el menor Federico A. Pérez Carballo presentaron una "**Demanda**" sobre daños y perjuicios. Mediante la misma, alegaron que el 25 de julio de 2024 el menor Federico A. Pérez Caraballo se encontraba en el *driving range* del campo de golf del Wyndham Grand Rainforest, Beach & Golf Resort cuando, al dirigirse al carrito de golf a buscar agua, súbitamente un perro realengo que se encontraba por el área se lanzó hacia él y lo mordió en la pierna izquierda, lo que ocasionó que perdiera el balance y cayera al suelo, sufriendo lesiones físicas. Así pues, sostuvieron que el aludido suceso ocurrió por la culpa y/o negligencia de Rio Mar Hospitality Holdings, LLC h/n/c Wyndham Grand Rio Mar Rainforest, Beach & Golf Resort y su aseguradora, Chubb Insurance Company of Puerto Rico (en adelante, "Recurridos"), toda vez que permitieron y/o promovieron la existencia de perros realengos en el campo de golf que constituía una condición peligrosa para visitantes y usuarios de las facilidades.

Asimismo, expusieron que la negligencia de los Recurridos era clara, puesto que existía un claro historial de problemas anteriores en los que se reportaron ataques de perros realengos dentro de las facilidades del hotel, sin que se tomaran medidas correctivas y efectivas. En vista de lo anterior, solicitaron que se declarara "Con Lugar" la "**Demanda**" y se condenara a los Recurridos al pago de una suma no menor de $120,000.00, por los daños ocasionados más una cuantía por concepto de costas, gastos y honorarios de abogado.

Así las cosas, el 25 de septiembre de 2025, los Recurridos presentaron su "**Contestación a Demanda**". Ese mismo día, presentaron una "**Demanda contra Tercero**" a través de la cual sostuvieron que el accidente detallado en la "**Demanda**" ocurrió en un área de la única competencia y jurisdicción del Municipio, por virtud de que la Ley Núm. 154-2008, según enmendada, conocida como la "Ley para el Bienestar y la Protección de los Animales", en su Artículo 3, le delegó al Municipio Autónomo de Rio Grande la responsabilidad del recogido de los perros realengos. 5 LPRA sec. 1660. En la alternativa, alegaron que, en caso de imponerse algún grado de responsabilidad por las presuntas actuaciones del Municipio, se redujera del porciento de negligencia atribuible al ayuntamiento del monto o porciento de negligencia que le atribuya o adjudique.

El 12 de enero de 2026, el Municipio presentó una "**Solicitud de Desestimación de la Demanda contra Tercero por falta de jurisdicción por incumplimiento con el Art. 1.051 del Código Municipal**" (en adelante, "Moción de Desestimación"). Sostuvo el Peticionario que al momento en que se presentó la "**Demanda contra Terceros**" habían transcurrido 427 días del alegado incumplimiento con la Ley Núm. 154, *supra*, y del incidente que motivó la radicación del pleito que nos ocupa. A esos efectos, arguyó el Municipio que los Recurridos tenían hasta el 23 de octubre de 2024 para cumplir con la notificación escrita que dispone el Artículo 1.051 del Código Municipal, 21 LPRA sec. 7082. Alternativamente, sostuvo que la reclamación en su contra debía ser desestimada por prescripción y advirtió que no renunciaba a invocar dicha defensa. En vista de lo anterior, solicitó la desestimación de la "**Demanda contra Terceros**", por falta de jurisdicción sobre la materia.

Varios días más tarde, los Recurridos presentaron "**Oposición a Moción de Desestimación**", en la que sostuvieron que la jurisprudencia del Tribunal Supremo de Puerto Rico establece que la obligación de notificar al Municipio no surgió sino hasta que los Recurridos, como terceros demandantes, fueron emplazados por primera vez con la "**Demanda**"

original. De conformidad, plantearon que el término del requisito de notificación bajo el Artículo 1.051 del Código Municipal, *infra*, se activó a partir de la fecha del emplazamiento, el 1 de septiembre de 2025, y no del evento en sí. Igualmente, expresaron que en la medida en que el Municipio fue demandado contra tercero y emplazado dentro del término de noventa (90) días contado a partir del aludido 1 de septiembre de 2025, se debía concluir que las comparecientes cumplieron con el requisito de notificación.

Evaluados los planteamientos de las partes, el 12 de febrero de 2026, el TPI emitió una *Resolución Interlocutoria* mediante la cual declaró "No Ha Lugar" la *Moción de Desestimación* presentada por el Municipio. En desacuerdo, el 27 de febrero de 2026, el Peticionario presentó una "**Solicitud de Reconsideración a Resolución dl 12 de febrero de 2026**" que fue denegada por vía de una *Resolución Interlocutoria* dictada el 24 de marzo de 2026.

Aun inconforme, el Municipio acudió ante este Tribunal mediante el recurso de *certiorari* que nos ocupa imputándole al foro de instancia la comisión de los siguientes errores:

> **PRIMER ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO SE NEGÓ A DESESTIMAR LA DEMANDA CONTRA TERCERO, A PESAR DE QUE LOS DEMANDANTES Y LOS DEMANDANTES CONTRA TERCERO INCUMPLIERON CON EL REQUISITO ESTATUARIO DE NOTIFICACIÓN QUE RESULTA INDISPENSABLE PARA PODER DEMANDAR A CUALQUIER MUNICIPIO.**
>
> **SEGUNDO ERROR: ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN CUANDO SE NEGÓ A DESESTIMAR LA DEMANDA CONTRA TERCERO, A PESAR DE QUE LA CAUSA DE ACCIÓN DEL DEMANDANTE CONTRA EL TERCERO DEMANDADO ESTÁ PRESCRITA**.

El 4 de mayo de 2026, comparecieron los Recurridos mediante "**Alegato en Oposición a Petición de *Certiorari***".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión

de un tribunal inferior. 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019). A pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711.

Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; Banco Popular de Puerto Rico v. Gómez Alayón, 213 DPR 314, 336 (2023). Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). En lo pertinente, la precitada disposición reglamentaria establece lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v. Gómez Alayon, *supra*, pág. 13. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. SLG Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

En nuestro Código Civil, se identifican dos clases de actos perjudiciales que resultan en responsabilidades distintas, a saber: la contractual y la extracontractual. En ambas situaciones, la indemnización de daños requiere la existencia de una conducta antijurídica causante de los

daños. <u>Ramos v. Orientalist Rattan Furnt., Inc.</u>, 130 DPR 712, 721 (1992). La responsabilidad contractual emana del "quebrantamiento de un deber que surge de un contrato expreso o implícito". <u>Rivera Sanfeliz *et al.* v. Jta. Dir First Bank</u>, 193 DPR 38, 56 (2015). Mediante las acciones *ex contractu*, se reclaman los perjuicios surgidos por el incumplimiento de obligaciones acordadas previamente. <u>Íd</u>.

Para que la responsabilidad contractual surta efecto, no es suficiente tener un contrato entre las partes, sino que se necesita "la realización de un hecho dentro de la rigurosa órbita de lo pactado y como desarrollo del contenido negocial". <u>Maderas Tratadas v. Sun Alliance et al.</u>, 185 DPR 880, 909 (2012). Así pues, las acciones resultantes de contratos buscan asegurar el cumplimiento de promesas acordadas a las que las partes contratantes dieron su consentimiento. <u>Santiago Nieves v. ACAA</u>, 119 DPR 711, 716 (1987).

Por su parte, las acciones extracontractuales, conocidas como *ex delicto*, buscan indemnizar los daños derivados de la transgresión del principio básico de convivencia social, que implica no causar daños ni perjuicios a los demás. <u>Rivera Sanfeliz *et al.* v. Jta. Dir First Bank</u>, *supra*, pág. 57. Esto es, la culpa extracontractual no se origina de la voluntad de las partes, sino del incumplimiento de unas obligaciones impuestas por la naturaleza o por la ley. <u>Ramos v. Orientalist Rattan Furnt., Inc.</u>, *supra*, pág. 721. La finalidad de esta acción es reparar los daños que surgen en el curso de diversas actividades humanas, al margen de toda relación jurídica previa entre el causante del daño y la víctima. <u>Íd</u>, pág. 720 (citando a R. de Ángel Yagüez, <u>La Responsabilidad Civil</u>, Bilbao, Universidad de Deusto, 1988, págs. 21–22). Es decir, a diferencia de la responsabilidad contractual, la responsabilidad extracontractual surge exclusivamente como consecuencia del daño, prescindiendo de cualquier relación jurídica previa entre las partes involucradas. <u>Rivera Sanfeliz *et al.* v. Jta. Dir First Bank,</u> *supra*, pág. 57.

**C.**

Con el propósito esencial de promover la estabilidad social y económica de las relaciones bilaterales, nuestro ordenamiento jurídico ha

instituido, mediante el Código Civil, disposiciones legales que regulan la figura de la prescripción y las formas de interrumpirla.

El Artículo 1189 regula la figura de prescripción y dispone que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley". 31 LPRA sec. 9481. A raíz de ello, nuestro máximo foro judicial ha definido la prescripción como "una figura que extingue un derecho debido a que una parte no lo ejerce en un período de tiempo determinado por ley". Rivera Ruiz v. Mun. De Ponce, 196 DPR 410, 415 (2016).

En cuanto a la prescripción extintiva, el plazo o término provisto por la ley para el ejercicio de un derecho o acción juega un rol esencial en instrumentar el interés del estado en la solución rápida de las controversias. Birriel Colón v. Econo y otro, 213 DPR 80, 95 (2023). Por esto, el plazo dispuesto está predicado en el objetivo de (1) proteger al deudor de reclamaciones tan remotas que lo posicionen en un estado de indefensión y (2) estimular el pronto reclamo de las obligaciones legales y procurar, por tanto, la tranquilidad del obligado contra la pendencia indefinida de una acción legal en su contra. Cintrón v. E.L.A., 127 DPR 582, 588-589 (1990). La prescripción es una institución que se fundamenta "en el imperativo de castigar la inercia en el ejercicio de los derechos" para con ello, evitar litigios de difícil adjudicación por su antigüedad. Xerox Corp. v. Gómez Rodríguez y otros, 201 DPR 945, 952 (2019); Zambrana Maldonado v. E.L.A., 129 DPR 740, 751 (1992). Así es que "la prescripción extintiva está basada en una presunción 'iuris tantum' de abandono, que admite prueba en contra, la existencia de una voluntad manifestada y probada, contraria a la prescripción, destruye aquella presunción, quedando impedida su consumación". Íd., pág. 752.

Como indicamos previamente, nuestro ordenamiento trata de manera distinta la responsabilidad contractual y la extracontractual. Una de las diferencias más destacadas entre ambas radica en el plazo de prescripción asignado a cada tipo de responsabilidad. Así pues, el plazo para ejercer las acciones extracontractuales comienza a contar desde que el perjudicado conoce que ha sufrido un daño y quién se lo causó. Ojeda v. El Vocero de

P.R., 137 DPR 315, 325 (1994). Esto es lo que en nuestra jurisdicción se conoce como la teoría cognoscitiva del daño. Bajo esta teoría, basta que la persona perjudicada conozca del daño sufrido y quién se lo ha causado para que se active el término establecido en ley para ejercer la acción. García Pérez v. Corp. Serv. Mujer, 174 DPR 138, 147-148 (2008); Vera v. Dr. Bravo, 161 DPR 308, 322 (2004).

**D.**

En nuestro ordenamiento jurídico se reconoce el derecho que ostenta todo individuo para reclamar cualquier daño o perjuicio sufrido a raíz de la consecución de actos culposos o negligentes de un tercero. Hernández Vélez v. Televicentro, 168 DPR 803, 812 (2006). Específicamente, el Artículo 1536 del Código Civil de Puerto Rico dispone que "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801. Es decir, la responsabilidad que emana de dicho artículo requiere que concurran tres elementos, a saber: (1) un acto culposo o negligente; (2) un daño; y (3) un nexo causal entre el daño y la conducta generadora de éste. Sucn. Mena Pamias *et al.* v. Meléndez *et al.*, 212 DPR 758, 768 (2023); Rivera v. S.L.G. Díaz, 165 DPR 408, 421 (2005). De ahí que se establezca que para determinar responsabilidad civil extracontractual por actos culposos o negligentes se deba evaluar el factor previsibilidad y el riesgo inherente a la luz de las circunstancias. Pérez *et al.* v. Lares Medical *et al.*, 207 DPR 965, 976-977 (2021). Así pues, "[e]l deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible." Elba A.B.M. v. U.P.R., 125 DPR 294, 309 (1990).

Atinente a la controversia que tenemos ante nos, es menester que expongamos la norma reconocida por nuestro Tribunal Supremo en los casos de Fraguada v. Hospital Auxilio Mutuo, 186 DPR 365 (2012) y en Maldonado Rivera v. Suárez, 195 DPR 182 (2016).

En *Fraguada*, el Tribunal Supremo revocó la norma establecida en Arroyo v. Hospital La Concepción, 130 DPR 596 (1992), y su progenie y adoptó en nuestra jurisdicción la figura de la solidaridad impropia, conocida

también como obligación *in solidum*, que ha sido adoptada en las jurisdicciones de Francia y España. Allí, se concluyó que "el Art. 1974 del Código Civil no aplica a los casos de daños y perjuicios al amparo del Art. 1802 del Código Civil [hoy Art. 1536]". <u>Fraguada Bonilla v. Hosp. Aux. Mutuo</u>, *supra*, pág. 389.

En ese sentido, dispuso el alto foro que "el perjudicado podrá recobrar de cada cocausante demandado la totalidad de la deuda que proceda, porque los efectos primarios de la solidaridad se mantienen. Sin embargo, deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido por el Art. 1868 del Código Civil, *supra*, si interesa conservar su causa de acción contra cada uno de ellos". <u>Íd</u>. En otras palabras, expuso el Tribunal Supremo que "la presentación oportuna de una demanda contra un presunto cocausante no interrumpe el término prescriptivo contra el resto de los alegados cocausantes, porque tal efecto secundario de la solidaridad no obra en la obligación *in solidum*". <u>Íd</u>.

En *Maldonado*, el Tribunal Supremo reiteró la normativa reconocida en *Fraguada* y especificó que, aunque en dicho caso la controversia no giraba en torno a una demanda contra tercero sino a una enmienda a la demanda promovida por el demandante una vez había transcurrido el término prescriptivo, la prescripción como efecto secundario aplicaba de manera similar. Allí se estableció que la premisa que posibilita la acción de nivelación contingente es que "la causa de acción del demandante no esté prescrita". <u>Maldonado Rivera v. Suárez</u>, *supra*, pág. 205. Concluyó que "debido a que la reclamación sobre daños y perjuicios es la causa de acción principal y la acción de nivelación es subsidiaria y dependiente, si la primera no está disponible por motivo de prescripción, la segunda se torna improcedente". <u>Íd</u>., pág. 208. Es decir, "[a]l prescribir la reclamación sobre daños y perjuicios a favor de un cocausante, éste queda liberado de tener que responder, pues su responsabilidad deja de ser exigible". <u>Íd</u>.

El alto foro fue más allá y específicamente expuso que "los cocausantes demandados tampoco pueden, mediante demanda contra

tercero, presentar en su contra una acción de nivelación contingente, pues al extinguirse el derecho del perjudicado a exigir responsabilidad de ese cocausante, cesa la obligación para los demás cocausantes de responder por la parte de aquel en el daño". Íd., pág. 209. Por ello, el por ciento de responsabilidad de ese cocausante que no fue demandado dentro del término prescriptivo con conocimiento del demandante, se resta de la totalidad y el perjudicado será indemnizado por el valor monetario de la diferencia que resulte. Íd., pág. 210.

**E.**

En lo pertinente, el Art. 1.051 del Código Municipal de Puerto Rico establece la manera de proceder en caso de tener una causa de acción sobre daños y perjuicios contra algún municipio. Así, el referido artículo dispone lo siguiente:

> Toda persona que tenga reclamaciones de cualquier clase contra un municipio por daños personales o a la propiedad, ocasionados por la culpa o negligencia del municipio, deberá presentar una notificación escrita dirigida al Alcalde, haciendo constar en forma clara y concisa la fecha, lugar, causa y naturaleza general del daño sufrido. En dicha notificación se especificará, además, la cuantía de la compensación monetaria o el tipo de remedio adecuado al daño sufrido, los nombres y direcciones de sus testigos y la dirección del reclamante, y en los casos de daño a la persona, el lugar donde recibió tratamiento médico en primera instancia.
>
> (a) Forma de entrega y término para hacer la notificación. — Dicha notificación se entregará al Alcalde, se remitirá por correo certificado a la dirección designada por el municipio o por diligenciamiento personal, acudiendo a la oficina del Alcalde durante horas laborables, y haciendo entrega de la misma a su secretaria personal o al personal administrativo expresamente autorizado a tales fines.
>
> La referida notificación escrita deberá presentarse dentro de los noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños reclamados. Si el reclamante está mental o físicamente imposibilitado para hacer dicha notificación en el término antes establecido, no quedará sujeto al cumplimiento del mismo, debiendo hacer la referida notificación dentro de los treinta (30) días siguientes a la fecha en que cese la incapacidad. […]
>
> (b) **Requisito jurisdiccional. —** No podrá responsabilizarse, ni iniciarse acción de clase alguna contra un municipio, en reclamaciones por daños causados por culpa o negligencia, a menos que el reclamante haga la notificación escrita, en la forma, manera y en los plazos de caducidad dispuestos en este Artículo. No constituirá una notificación válida, aquella que se presente en alguna otra entidad estatal o municipal

que no sea la del municipio contra el que se presenta la reclamación. 21 LPRA sec. 7082 (énfasis suplido).

En este sentido, el requisito de notificación establecido en la mencionada norma constituye una condición previa indispensable para iniciar cualquier acción judicial en resarcimiento de daños y perjuicios en contra de un municipio. Rivera Fernández v. Mun. Carolina, 190 DPR 196, 206 (2014); Mangual v. Tribunal Superior, 88 DPR 491 (1963). En efecto, dicho requisito persigue varios objetivos de carácter público:

> 1) proporcionar a estos cuerpos políticos la oportunidad de investigar los hechos que dan origen a la reclamación; 2) desalentar las reclamaciones infundadas; 3) propiciar un pronto arreglo de las mismas; 4) permitir la inspección inmediata del lugar del accidente antes de que ocurran cambios; 5) descubrir el nombre de las personas que tienen conocimiento de los hechos y entrevistarlas mientras su recuerdo es más confiable; 6) advertir a las autoridades municipales de la existencia de la reclamación para que se provea la reserva necesaria en el presupuesto anual; y, 7) mitigar el importe de los daños sufridos mediante oportuna intervención ofreciendo tratamiento médico adecuado y proporcionando facilidades para hospitalizar al perjudicado. López v. Autoridad de Carreteras, 133 DPR 243, 249 (1993).

Es importante destacar que el antiguo Artículo 15.003 de la derogada Ley Núm. 81-1991, según enmendada, conocida como la "Ley de Municipios Autónomos de Puerto Rico", contenía una disposición similar al actual Artículo 1.051 del Código Municipal de Puerto Rico. Como breve trasfondo histórico, la Ley Núm. 121-2018, enmendó la Ley Núm. 81-1991, con el propósito de precisar, entre otros asuntos, el carácter jurisdiccional del requisito de notificación al alcalde y que el término para su cumplimiento es uno de caducidad. En particular, la Exposición de Motivos de la Ley Núm. 121-2018 reveló que la variada jurisprudencia interpretativa sobre el Artículo 15.003 basaba sus fundamentos en el historial legislativo de la Ley Núm. 104-1995, según enmendada, conocida como la "Ley de Reclamaciones y Demandas contra el Estado", 32 LPRA sec. 3077 et seq. Véase, Exposición de Motivos de la Ley Núm. 121-2018 (2018 [Parte 1] Leyes de Puerto Rico, págs. 993-995).

A tales efectos, la Ley Núm. 121-2018 pretendía clarificar el marco normativo, toda vez que se reconoció jurisprudencialmente diversas situaciones que constituyen "justa causa" y que excusan al reclamante de la

obligación de cumplir con el requisito de notificación establecido en el Artículo 15.003 de la Ley Núm. 81-1991, *supra*. *Véase*, Exposición de Motivos de la Ley Núm. 121-2018. *Véase*, Rivera Fernández v. Mun. Carolina, *supra*; Acevedo v. Mun. De Aguadilla, 153 DPR 788, 798 (2001); Méndez *et. al.* v. Alcalde de Aguadilla, 151 DPR 853 (2000); López v. Autoridad de Carreteras, *supra*; Romero Arroyo v. ELA, 127 DPR 724 (1991); Meléndez Gutiérrez v. E.L.A., 113 DPR 811 (1983).

**III.**

Mediante el recurso que nos ocupa, el Municipio nos solicita que revoquemos la *Resolución Interlocutoria* mediante la cual el TPI denegó la solicitud de desestimación que interpuso.

En resumidas cuentas, el Peticionario arguye que el foro *a quo* erró al no desestimar la "**Demanda contra Tercero**" bajo los siguientes dos (2) fundamentos, a saber: (1) falta de notificación, de conformidad con el Artículo 1.051 del Código Municipal de Puerto Rico, 21 LPRA sec. 7082; y (2) al no concluir que la causa de acción de la "**Demanda**" original estaba prescrita en su contra y, por tanto, procedía la desestimación de la "**Demanda contra Tercero**" que presentaron los Recurridos.

Atendemos, primeramente, el segundo señalamiento de error. En esencia, el Municipio sostiene que los autos reflejan que los hechos que dieron paso a la presentación de la "**Demanda**" ocurrieron el 24 de julio de 2024 y que los demandantes no acumularon al pleito al Peticionario y no fue sino hasta el 25 de septiembre de 2025 que se presentó la "**Demanda contra Tercero**". De conformidad con ello, expuso que un cómputo sencillo reflejaba que, para la fecha en que se demandó al Municipio, habían transcurrido cuatrocientos veintisiete (427) días desde los hechos que motivaron la "**Demanda**" y, por tanto, procedía la desestimación de la "**Demanda contra Tercero**" incoada en su contra. Le asiste la razón, parcialmente.

Tal y como hemos adelantado, en *Maldonado*, el Tribunal Supremo resolvió que era incompatible con la norma sentada en *Fraguada* que "un demandante se cruzara de brazos y, amparándose en la interrupción

automática, pretendiera tiempo después traer al pleito a un cocausante cuya responsabilidad conocía o podía conocer". Maldonado Rivera v. Suárez, *supra*, pág. 207. En otras palabras, el alto foro judicial local concluyó que cuando la reclamación sobre daños y perjuicios es la reclamación principal y la acción de nivelación es accesoria y dependiente, **si la primera no está disponible por motivo de prescripción, la segunda se torna improcedente**. Íd., pág. 208. "Al prescribir la reclamación sobre daños y perjuicios a favor de un cocausante, éste queda liberado de tener que responder, pues su responsabilidad deja de ser exigible". Íd.

Así pues, al evaluar los hechos del caso ante nos, lo cierto es que no existe controversia en cuanto a que los demandantes no le reclamaron extrajudicialmente al Municipio por los hechos que motivaron la interposición de la "**Demanda**" original. Además, a quien único acumuló como parte demandada fue a los Recurridos. Surge de las aseveraciones esbozadas por los demandantes que los hechos ocurrieron el 25 de julio de 2024. No obstante, no fue sino hasta el 25 de septiembre de 2025 que los Recurridos interpusieron la "**Demanda contra Tercero**". Ese fue el momento en que el Peticionario advino en conocimiento de que existía una reclamación en su contra. Este hecho no ha sido contradicho o controvertido de forma alguna.

Es evidente, por tanto, que desde la ocurrencia del evento que se reclama en la "**Demanda**" original (fecha en que los demandantes sabían o debían saber quién o quiénes le ocasionaron el agravio) y la fecha en que se presentó la "**Demanda contra Tercero**" transcurrió tiempo en exceso del término prescriptivo de un (1) año que dispone nuestro ordenamiento jurídico para la presentación de una reclamación por daños y perjuicios.

Ahora bien, no podemos perder de perspectiva que los demandantes en el caso de autos son los padres de un menor de edad y la sociedad legal de bienes gananciales compuesta por ellos, por sí y en representación de dicho menor. En línea con lo anterior, el Artículo 104 (a) del Código Civil establece que todo menor no emancipado tiene restringida su capacidad de obrar por sí mismo en los asuntos que afectan sus bienes y/o sus intereses personales. 31 LPRA sec. 5614. Sumado a esto, el Artículo 1196 de dicho

cuerpo estatutario dispone que "[l]a prescripción no tiene lugar contra las personas que no pueden contratar o accionarse entre sí". 31 LPRA sec. 9488. Asimismo, nuestro más alto foro judicial ha determinado que la prescripción se suspende durante todo el período de la incapacidad del menor. De Jesus v. Chardón, 116 DPR 238, 253 (1985).

Así pues, a tenor con la normativa antes citada, aun cuando resulta evidente que la "**Demanda contra Tercero**" fue instada fuera del término prescriptivo aplicable, dicho plazo no comienza a transcurrir en perjuicio del menor de edad mientras subsista su minoridad. Sin embargo, no ocurre lo mismo respecto a sus padres, quienes sí están sujetos al cómputo ordinario de la prescripción, de conformidad con lo resuelto por el Tribunal Supremo en *Maldonado*. Esto porque para ellos es de aplicabilidad las expresiones del alto foro a los efectos de que "debido a que la reclamación sobre daños y perjuicios es la causa de acción principal y la acción de nivelación es subsidiaria y dependiente, si la primera no está disponible por motivo de prescripción, la segunda se torna improcedente". Maldonado Rivera v. Suárez, *supra*, pág. 208. Es decir, "[a]l prescribir la reclamación sobre daños y perjuicios a favor de un cocausante, éste queda liberado de tener que responder, pues su responsabilidad deja de ser exigible". Íd.

En consecuencia, procedía que el foro *a quo* decretara la desestimación de las causas de acción instadas por los padres del menor y de la sociedad legal de bienes gananciales compuesta por ambos éste en su carácter personal, manteniendo vigente únicamente la reclamación del menor en su carácter individual.

Habiéndose determinado lo anterior, corresponde adjudicar el primer señalamiento de error esgrimido. En esencia, el Municipio plantea que el TPI erró al no desestimar la "**Demanda**", a pesar de que se incumplió con el requisito estatutario de notificación que resulta indispensable para poder demandar a cualquier ayuntamiento. Veamos.

El Artículo 1.051 del Código Municipal de Puerto Rico, *supra*, dispone que toda persona que ostente reclamaciones de cualquier clase contra un municipio debe presentar una notificación escrita al Alcalde dentro de los

noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños reclamados. 21 LPRA sec. 7082. Sobre ello, no albergamos duda. No obstante, en el caso específico de las demandas contra terceros, nuestro Tribunal Supremo ha expresado manifiestamente que el plazo de noventa (90) días que activa la obligación de los demandados de notificar al Estado o, en este caso, a los municipios surge a partir de que se diligencia el emplazamiento de la demanda original, toda vez que es en ese momento cuando la parte demandada que adviene también parte demandante contra tercero adquiere conocimiento de los daños que se reclaman en su contra y, por tanto, solicita que se acumule a ese tercero al pleito para que potencialmente le responda a los demandantes originales, si es que se determina que tiene algún porciento de responsabilidad ante éstos. Rodríguez Sosa v. Cervecería India, 106 DPR 479, 484, (1977).

De los autos del presente caso se desprende que Río Mar Hospitality Holdings, LLC h/n/c Wyndham Grand Río Mar Rainforest, Beach & Golf Resort fue emplazada mediante diligenciamiento personal el 1 de septiembre de 2025, mientras que Chubb Insurance Company of Puerto Rico, Inc., como aseguradora de este último, renunció al emplazamiento el 24 de julio de 2025. Por su parte, la "**Demanda Contra Tercero**" objeto de la presente controversia se radicó el 26 de septiembre de 2025.

Así pues, si bien el requisito de notificación dentro de los noventa (90) días tiene carácter jurisdiccional, en el caso específico de las demandas contra tercero, su cómputo debe realizarse a partir del momento en que la parte contra quien se dirige la reclamación original, es decir el demandado y demandante contra tercero, adviene en conocimiento de los daños alegados en su contra. Conforme a la precitada normativa aplicable, ello ocurre desde el diligenciamiento del emplazamiento o la renuncia al mismo, por ser ese el acto que formaliza la reclamación incoada en su contra y que activa dicho conocimiento. En consecuencia, es desde ese momento que comienza a transcurrir el término de noventa (90) días dispuesto por ley.

A luz de lo anterior, y considerando las fechas que surgen del expediente ante nuestra consideración, procede concluir que el Municipio fue notificado dentro del término legal aplicable. Al examinar los autos electrónicos ante nuestra consideración, notamos que la presentación de la "**Demanda contra Tercero**" se efectuó dentro del plazo de noventa (90) días que dispone el Artículo 1.051 del Código Civil, *supra*, desde que se diligenció el emplazamiento de Rio Mar Hospitality Holdings y desde que Chubbs Insurance Company of Puerto Rico hizo efectiva la renuncia al emplazamiento expedido a su nombre. Por consiguiente, y conformidad con el estado de derecho de aplicable, la presentación de la "**Demanda contra Tercero**" dentro del aludido plazo fue un sustituto adecuado de la notificación formal que dispone nuestro ordenamiento jurídico. *Véase*, López v. Autoridad de Carreteras, 133 DPR 243, 254 (1993). Por tanto, el foro de instancia no erró al concluir que no procedía la desestimación por falta de notificación, de conformidad con el Artículo 1.051 del Código Municipal, *supra*. Claro está, dado a nuestra conclusión sobre los méritos del primer señalamiento de error, esta determinación aplica **exclusivamente** a la reclamación presentada por los padres, en representación del menor, no así a la reclamación personal de ellos.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, se *expide* el auto de *certiorari* ante nos, se *revoca* en parte la *Resolución Interlocutoria* recurrida, a los efectos de decretar la desestimación, con perjuicio, de la "**Demanda contra Tercero**" instada en contra del Municipio, en lo que concierne **exclusivamente** a la reclamación original que presentaron el Sr. Ramón A. Pérez Delboy, la Sra. Vanessa Carballo Santiago y la Sociedad Legal de Bienes Gananciales compuesta por ambos, toda vez que la acción de nivelación es de carácter subsidiaria y dependiente de la acción principal, la cual no está disponible en contra del Peticionario por motivo de prescripción. Ahora bien, por estar suspendidos los términos prescriptivos a favor del menor Federico A. Pérez Carballo, dicha normativa no le es de aplicación a

éste y, por tanto, se mantiene vigente su reclamación original acumulada en la "**Demanda**".

De otro lado, se *confirma* en parte la determinación recurrida en cuanto a la denegatoria de la solicitud de desestimación por falta de notificación al amparo del Artículo 1.051 del Código Municipal, *supra*, en lo que respecta al referido menor.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones